**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tapestry on Central Condominium Association, | No. CV-19-01490-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Liberty Insurance Underwriters Incorporated, | |
| Defendant. | |

Before the Court are the parties' motions for partial summary judgment. As described herein, Defendant/Counterclaimant Liberty Insurance Underwriters, Inc.'s ("Liberty" or "Defendant") motion is denied. (Doc. 46.) Plaintiff/Counter-defendant Tapestry on Central Condominium Association's ("Tapestry" or "Plaintiff") motion is denied except as to Count IV of Liberty's Counterclaim. (Doc. 169.) Tapestry has also filed a motion to certify a question to the Arizona Supreme Court, and Liberty has filed two motions to seal. (Docs. 54, 58, 62.) Those motions are denied.[1]

## I.     BACKGROUND

### A.     Factual History

Tapestry is the condominium association for "Tapestry on Central," an "upscale three-building, seven floor, 292-unit condominium complex" in Phoenix, Arizona. (Doc. 4

---

[1] Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

¶ 4.) The complex contains residential and commercial units. Tapestry is an Arizona non-profit corporation. (*Id.*) Liberty is an Illinois insurance company authorized to issue policies in Arizona. (*Id*. ¶ 2.)

Tapestry on Central, LLC ("TOC"), a non-party to this case, owned 11 commercial units at the condominium complex. On November 26, 2012, TOC sent an email to members of Tapestry's Board of Directors regarding an apparent dispute over parking spaces and alleged construction defects affecting the units. (Doc. 46-1 at 15, 33.) It asserted that Tapestry had previously agreed to provide 15 parking spaces to TOC and to remedy various construction defects. (*Id*. at 15.) In return, TOC agreed to pay outstanding homeowner association ("HOA") dues to Tapestry. Instead of honoring its commitment, the email asserts, Tapestry hired a collection agency and placed a lien on TOC's units. TOC asked for the lien to be removed. (*Id*.)

On January 31, 2013, Tapestry emailed TOC, stating that the Board of Directors would vote to give 15 parking spaces to TOC and to waive any pending fees and penalties. In exchange, TOC would pay its outstanding HOA fees. (*Id*. at 16.)

On March 4, 2013, a "litigation consultant" for Tapestry wrote a letter to an accounting firm stating that litigation "has been threatened informally on numerous occasions by the owner of the commercial units . . . relating to approximately $130[,]000 in dues owed the HOA and designated parking spaces." (*Id.* at 19.) It further stated that "[t]his unit owner has failed to pay dues to the HOA for much for the commercial space." (*Id*.) The owner also "assert[ed] certain construction defects," that the HOA "stole parking spaces," and that it "has lost rents and other damages" as a result. (*Id*.) The letter also stated that on February 26, 2013, Tapestry's Board of Directors met and voted to forego collection of certain dues, to waive fees and interest, and to provide the 15 parking spots in exchange for TOC's payment of other dues. (*Id*.) At the same meeting, "the Board expressed that it would pursue these claims vigorously if this settlement is not accepted." (*Id*.)

On May 14, 2013, counsel for TOC sent a letter to Tapestry stating, "[a]lthough I understand that there has been some negotiation between the parties, with and without

counsel, it appears the discussions have stalled. Meanwhile my client continues to be injured by the actions of the Association in taking [its] parking spaces." (Doc. 46-1 at 20.) It further stated that TOC "has contacted our firm regarding moving forward with litigation[.]" (*Id.* at 21.) On May 17, 2013, counsel for Tapestry responded, stating, "You are correct when you state that there have been ongoing negotiations between the parties, with and without counsel, but I do not believe these negotiations have stalled." (*Id.* at 22.) Counsel enclosed a proposed Settlement Agreement and Release, which had been approved by Tapestry, for TOC's consideration. (*Id.* at 23–28.) A settlement was not reached.

On October 15, 2013, Tapestry executed and submitted an insurance application to Liberty. (Doc. 46 at 3; Doc. 46-1 at 29–30.) On October 26, 2013, Liberty issued the liability policy at issue, the Community Association Executive Advantage Policy, No. CAP010206-0212, to Tapestry (the "Policy"). It was effective from October 26, 2013 to October 24, 2014. (Doc. 4 ¶ 6, at 11–35.) The Policy has a $1,000,000 limitation of liability. (*Id.* at 11.)

On January 23, 2014, TOC filed suit in the Superior Court of Arizona against Tapestry and its directors (the "Underlying Action").[2] (*Id.* ¶ 8.) The second amended complaint stated that Tapestry improperly placed a lien on TOC's commercial units due to a dispute over unpaid assessments, that TOC was not provided underground parking spots as contracted, and that various construction defects affected its units. (Doc. 46-2 at 58–73.) It asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of oral contract, various tort claims, fraud, and for a declaratory judgment. (*Id.* at 73–93.) Tapestry also filed a counterclaim against TOC in the Underlying Action. (Doc. 46 at 6.)

Tapestry tendered the Underlying Action to Liberty for defense and indemnity. (Doc. 4 ¶ 9.) Liberty denied coverage in a March 6, 2014 letter. (*Id.* ¶ 10; Doc. 46-2 at 105.) That letter stated that "there appears to be no coverage available under the Policy for

---

[2] The case was styled *Tapestry on Central, LLC v. Tapestry on Central Condominium Association*, No. 2014-090103 (Ariz. Super. Ct.).

this matter." (Doc. 46-2 at 106.) It stated that the lawsuit did "not constitute a Claim first made during the Policy Period," as those terms were defined in Policy; that the Policy did not provide coverage for any "Construction Defect"; and that there was reason to believe that the material submitted in Tapestry's application was not "materially true and accurate." (*Id*. at 106–109.) Lastly, Liberty stated that it "expressly reserves all rights and defenses under the Policy and at law including the right to deny coverage and/or rescind the Policy based upon any of the foregoing bases and to deny coverage and/or rescind the Policy based on additional and alternative bases as other terms, conditions, exclusion, and endorsements of the Policy, including matters contained in any Application, are found to apply." (*Id.*)

On December 31, 2015, Tapestry filed suit against Liberty—in the first lawsuit between the two regarding the Underlying Action—alleging that Liberty breached the Policy by refusing the defend Tapestry in connection with the Underlying Action. (*Id*. ¶ 11.) In early 2017, the parties entered into a settlement agreement under which Liberty agreed to defend Tapestry for the duration of the Underlying Action. (*Id*.)

The Underlying Action proceeded to a jury trial in August 2017. (*Id*. ¶ 12.) The jury ruled for the plaintiff, TOC, on its breach of the implied covenant of good faith and fair dealing claims. (Doc. 47-1 at 7.) It also found for Tapestry, the defendant, on its counterclaim for unpaid assessments. The Superior Court judge entered judgment in TOC's favor on both its breach of contract (Count II) and breach of the implied covenant of good faith and fair dealing (Count IV) claims. The court entered a net judgment of $1,627,118.87 plus interest against Tapestry. (*Id*.) Tapestry appealed to the Arizona Court of Appeals. It requested that Liberty indemnify the judgment and continue to defend it on appeal.

On December 14, 2017, Liberty sent a letter to Tapestry reiterating its prior denial of indemnity. This letter raised, for the first time, that the judgment was subject to exclusion under Section 5.2 of the Policy, which precludes coverage for "liability of any Insured under any contract." (Doc. 46-3 at 65.) It also asserted that the Underlying Action did not constitute a "Claim" made during the policy period under Section 9.2, and invoked a construction defect exclusion (Section 4.11). (*Id*. at 66.) Ultimately, Liberty's position was

that "no indemnity coverage is afforded for the Judgment. Notwithstanding, Liberty may be amenable to a settlement of this matter if [Tapestry] and TOC likewise are interested." (*Id.*)

On June 18, 2018, Liberty's counsel informed Tapestry's counsel that it would not participate in an upcoming settlement conference because there was no indemnity coverage for the judgment. (Doc. 46-4 at 22.) TOC and Tapestry participated in a settlement conference on appeal on July 24, 2018. In December 2018, Tapestry, TOC, and other parties entered into a "global settlement agreement" that resolved the Underlying Action and several other disputes between the parties. (Doc. 46 at 8.)

**B.    Procedural History**

Tapestry filed its present Complaint against Liberty in Arizona Superior Court on February 1, 2019. (Doc. 4.) Liberty timely removed the case to this Court on March 4, 2019. (Doc. 1.) The Complaint alleges that Liberty breached the Policy by refusing to indemnify Tapestry in connection with the judgment in the Underlying Action and that it "lacked an objectively reasonable basis for its coverage position and for refusing to participate in settlement discussions." (*Id.* ¶ 24.) It asserts claims for breach of contract and bad faith. (*Id.* at 6–8.) Tapestry seeks compensatory, consequential, special, and punitive damages, its costs and attorney's fees, and pre- and post-judgment interest. (*Id.* at 9.) Liberty filed a counterclaim against Tapestry with claims for declaratory judgment, breach of the parties' settlement agreement, fraudulent inducement, and rescission of the Policy. (Doc. 10.) Liberty seeks various declarations that no coverage exists under various Policy terms, or, alternatively, that the Policy is "rescinded and void"; compensatory, consequential, and punitive damages; costs and attorney's fees; and pre- and post-judgment interest. (Doc. 10 at 20–21.)

Both parties filed their respective motions for partial summary judgment. (Docs. 46, 47.) The motions are now fully briefed. (Docs. 53, 57, 64, 65.) On the same day that it filed a response to Liberty's motion for summary judgment, Tapestry also filed a motion for certification of a question of law to the Arizona Supreme Court pursuant to A.R.S. § 12-

1861. (Doc. 54.) That motion is also now fully briefed. (Docs. 61, 69.) Liberty has filed two motions to seal, which are also ripe for adjudication. (Docs. 58, 62, 66–68, 70.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

## III.   DISCUSSION

### A.   Liberty's Motion for Partial Summary Judgment (Doc. 46)

Liberty moves for entry of summary judgment on Tapestry's claims (for breach of contract and bad faith), as well as on Counts I, II, III, V, and VII of its counterclaim. (Doc. 46 at 1.) The Court addresses Liberty's arguments in turn.

#### 1.   Contract Liability Exclusion

Liberty first argues that Section 5.2 of the Policy, the "contract liability exclusion," bars coverage for the judgment in the Underlying Action. (Doc. 46 at 10.) It asserts that, because TOC prevailed against Tapestry on only its claims for breach of contract and breach of the implied covenant of good faith and fair dealing, Section 5.2 "unambiguously bars coverage." (*Id.* at 12.) It moves for summary judgment on Tapestry's claims and Count II of its own counterclaim,[3] which seeks a declaratory judgment that no coverage exists

---

[3] As described below, per the parties' request, this case is being conducted in two phases. Phase Two, which has not yet commenced, addresses the Tapestry's bad faith claim. (Doc. 20 at 7.)

based on the contract liability exclusion. (Doc. 10 at 17.) Tapestry does not dispute this substantive position, but instead argues that Liberty's general reservation of rights was insufficient to invoke the exclusion under Arizona law. As an initial matter, the Court agrees with Liberty that, on its face, Section 5.2 bars coverage for the judgment in the Underlying Action. But, ultimately, there is a genuine dispute as to whether Tapestry's reservation of rights properly invoked the contract liability exclusion under Arizona law, thereby precluding summary judgment.

### a.    Policy Terms

The interpretation of an insurance contract is a question of law.[4] *See Wilshire Ins. Co. v. S.A.,* 224 Ariz. 97, 99 ¶ 6 (Ct. App. 2010). An insurance policy "must be read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." *Charbonneau v. Blue Cross*, 130 Ariz. 160, 163 (Ct. App. 1981) (citation omitted).  Courts interpret insurance policies according to their plain and ordinary meaning. *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.,* 225 Ariz. 194, 200 ¶ 14 (Ct. App. 2010). The insured has the burden of establishing coverage under an insuring clause. *Keggi v. Northbrook Prop. & Cas. Ins. Co.,* 199 Ariz. 43, 46 ¶ 13 (Ct. App. 2000). The insurer has the burden of proving the applicability of any exclusion. *Id.*

Section 5.2 of the parties' Policy states, "[t]he Insurer shall not be liable to pay any Loss in connection with any Claim for any actual or alleged liability of any Insured under any contract or agreement, express or implied, written or oral, except for employment related obligations which would have attached absent such contract or agreement."[5] (*Id.* at 10–11; Doc. 4 at 14 ¶ 5.2.) A "Loss" includes, in part, "sums which the Insureds are legally obligated to pay solely as a result of any Claim insured by this Policy, including damages, judgments, settlement amounts, legal fees and costs awarded pursuant to judgments." (*Id.*

---

[4] The parties agree that Arizona law applies to this case because Arizona has the most significant relationship to the parties and the transaction. *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992).

[5] Paragraph 5.2 also states that "these exclusions shall not apply to the Insurer's duty to defend and to pay Defense Costs." (*Id.*) That provision, and Liberty's defense of Tapestry, is not at issue in this case.

at 20 ¶ 23.14.) A "Claim" is defined as a "written demand for monetary or non-monetary relief against an Insured" or "the commencement of a civil or criminal judicial proceeding or arbitration against an Insured." (*Id.* at 18 ¶ 23.3.)

The court in the Underlying Action entered judgment "in favor of TOC and against [Tapestry] . . . on TOC's second and fourth claims for relief." (Doc. 46-3 at 60 ¶ 7.) TOC's second claim was for breach of contract against Tapestry. Its second amended complaint stated that Tapestry materially breached the "Declaration of Condominium and of Covenants, Conditions and Restrictions for Willowalk, a Condominium"[6] (the "CC&Rs") and that TOC was damaged as a result. (Doc. 46-2 at 75–76 ¶¶ 103–08.) The fourth claim stated that Tapestry breached the implied covenant of good faith and fair dealing because it owed TOC "a duty to deal fairly, and in good faith pursuant to the CC&Rs, and breached that duty by the conduct alleged herein." (*Id.* at 77–78 ¶¶ 113–16.) Accordingly, Liberty argues, the contract liability exclusion bars coverage "for any Loss (i.e., judgment or settlements) resulting from any Claim (i.e., the Underlying Action) for any liability of an Insured (i.e., [Tapestry]) under any contract whether express (i.e., the CC&Rs) or implied (i.e., the implied covenant of good faith and fair dealing." (Doc. 46 at 12.)

The Court agrees with Liberty that, on its face, the contract liability exclusion precludes coverage for the judgment in the Underlying Action. TOC identified the CC&Rs as the binding contract that Tapestry breached. Arizona law also recognizes that "CC & Rs constitute a contract between property owners as a whole and individual lot owners." *Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 297 ¶ 31 (Ct. App. 2011). *See also Ahwatukee Custom Ests. Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 634 ¶ 5 (Ct. App. 2000) ("CC & Rs constitute a contract between the subdivision's property owners as a whole and individual lot owners.").

Further, as to the breach of the duty of good faith and fair dealing claim, TOC asserted that Tapestry "owed Plaintiff a duty to deal fairly, and in good faith *pursuant to*

---

[6] Tapestry "was originally known as Willowalk Condominium Association." (Doc. 46-2 at 59.)

*the CC&Rs.*" (Doc. 46-2 at 77 ¶ 114) (emphasis added). Under Arizona law, the covenant of good faith and fair dealing is implied "in every contract." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 490 ¶ 59 (2002), as corrected (Apr. 9, 2002). A cause of action for breach of the implied covenant of good faith and fair dealing generally "arises as a matter of contract law, not tort law." *Ramos v. Wells Fargo Home Mortg.*, No. CV-17-00316-PHX-GMS, 2017 WL 3978701, at *2 (D. Ariz. Sept. 11, 2017). A plaintiff can seek relief as a matter of tort law if there is a "special relationship between the two parties." *Id. See also Burkons v. Ticor Title Ins. Co. of California*, 168 Ariz. 345, 355 (1991) ("[T]he remedy for breach of this implied covenant is ordinarily by action on the contract, but in certain circumstances, the breach of the implied covenant may provide the basis for imposing tort damages."). Seeing no such assertion from TOC in the Underlying Action, or from Tapestry in the present case, the Court understands both claims to have arisen "under any contract or agreement, express or implied." (Doc. 4 at 14 ¶ 5.2.) Therefore, on its face, the Court agrees with Liberty that the contract liability exclusion is applicable.

### b.    Reservation of Rights

As Tapestry argues, though, this does not end the inquiry. Tapestry states that the "core coverage issue in this case is whether the contract liability exclusion applies." (Doc. 53 at 3.) It asserts that this issue is "more complicated" than Liberty's other arguments because it requires "close analysis of Arizona coverage law." (*Id.*) Tapestry asserts that the primary question is "whether Liberty's general reservation of rights, which did not mention the contract liability exclusion, was sufficient to preserve the exclusion as a basis for denial." (*Id.*)

As noted, Liberty's initial March 6, 2014 letter stated that "there appears to be no coverage available under the Policy for this matter." (Doc. 46-2 at 108.) It stated that the Underlying Action did not constitute a "Claim" made during the policy period, that the construction defect exclusion precluded relief (Section 4.11), and that it "reserve[ed] all rights" with respect to Tapestry's potential misrepresentation in its insurance application.

(*Id.*) It did not specifically invoke the contract liability exclusion. That letter also stated that Liberty "expressly reserves all rights and defenses under the Policy. . ." (*Id*. at 109.) Tapestry states that, as a result, it "had no reason to suspect Liberty was contemplating denial" based on the contract liability exclusion. (Doc. 53 at 8.)

In Arizona, a liability insurer owes express duties to defend and, if coverage and liability exist, to indemnify the insured. *See Waddell v. Titan Ins. Co.*, 207 Ariz. 529, ¶ 14 (Ct. App. 2004). Arizona law provides three options to an insurer that receives notice from an insured about a potential claim. The insurer can "1) unconditionally accept coverage and defend the claim; 2) reject the claim and refuse to defend; or 3) defend the claim under a reservation of rights." *Great Am. Assurance Co. v. PCR Venture of Phoenix LLC*, 161 F. Supp. 3d 778, 782 (D. Ariz. 2015). Under Arizona law, when an insurer selects the third option, it "must defend its insured under a properly communicated reservation of rights or it will lose its right to later litigate coverage." *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 116 (1987). *See also Farmers Ins. Co. of Arizona v. Vagnozzi*, 138 Ariz. 443, 448 (1983) ("If the insurer defends the insured pursuant to a contractual duty to defend, the insurer must do so under a properly communicated reservation of rights to later litigate coverage.").[7] The reservation of rights notice must "fairly inform[ ] the insured of the insurer's position." *Equity Gen. Ins. Co. v. C & A Realty Co.*, 148 Ariz. 515, 518 (Ct. App. 1985). A reservation of rights must also be "timely," as an "insured is entitled to know *early in the litigation process* whether the insurer intends to honor [its] duty [to defend] in order that the insured may take steps to defend [itself]." *Penn Amer. Ins. Co. v. Sanchez*, 220 Ariz. 7, 12 ¶ 26 (Ct. App. 2008) (emphasis in original) (citation omitted).

The parties dispute whether Liberty's statement that it "expressly reserves all rights and defenses under the Policy. . . ," in itself, "properly communicated" its reservation of right to invoke the contract liability exclusion. (Doc. 46-2 at 109.) For its part, Tapestry

---

[7] As is not disputed in this case, an insurer generally may "reserve its rights on coverage while providing a defense in the underlying action, without thereby waiving its right to raise the question of liability under the terms of the policy at a later date." *Damron v. Sledge*, 105 Ariz. 151, 155 (1969) (internal quotations and citation omitted).

asserts that there is a "stark contrast" between reservations stating specific grounds and general reservations. (Doc. 53 at 8.) It does not cite any Arizona case law in support of this position. The Court acknowledges that other states disapprove of general reservations of rights. *See, e.g., Specialty Surplus Ins. Co. v. Second Chance, Inc.*, No. C03-0927C, 2006 WL 2459092, at *8 (W.D. Wash. Aug. 22, 2006) ("[G]enerally-worded reservations of rights are disapproved . . . Such reservations of rights are faulted for not stating the specific policy defenses upon which the insurer intends to rely.") (Washington law); *Harleysville Grp. Ins. v. Heritage Communities, Inc.*, 803 S.E.2d 288, 299 (S.C. 2017) (distinguishing between a reservation that "state[s] the specific grounds for contesting coverage" and a "non-specific—'we will let you know later'—purported reservation of rights.") (South Carolina law). Liberty counters that this "is not the rule in Arizona." (Doc. 64 at 4.) As Liberty characterizes the dispute, its "continued and unwavering representation to [Tapestry] that it was reserving all of its rights under the Policy . . . somehow was insufficient to put [Tapestry] on notice that Liberty was doing exactly as it said it was doing—reserving all of its rights under the Policy." (*Id.* at 3.) Liberty does not cite case law in support of this specific position.

The Court finds that a genuine dispute precludes summary judgment in Liberty's favor. The Court notes, for example, that in *Medical Protective Co. v. Pang*, 606 F. Supp. 2d 1049 (D. Ariz. 2008), this court concluded that an insurer was not estopped from seeking rescission of the policy based on fraud "just because it did not 'preserve' fraud in its initial reservation of rights letter." *Id.* at 1060. This conclusion would seem to support Liberty's argument. That said, the court also noted that the insurer "did not even learn of the alleged fraud until well after it defended" the insured. *Id.* The same is not true in this case. Based on TOC's claims in the Underlying Action, which included claims for breach of contract and breach of the implied covenant of good faith and fair dealing, Liberty either knew or should have known that it could have reserved the right to invoke the contract liability exclusion. Further, in *Mutual Insurance Co. of Arizona v. Bodnar*, 164 Ariz. 407 (Ct. App. 1990), the Arizona Court of Appeals noted that if an insurer believes that a "valid

exclusion" would relieve it of a duty to provide coverage, the insurer must "communicate its reservation of rights to the insured to inform the insured of its position as to coverage." *Id.* at 412. Based on this language, a reasonable juror may conclude that, by its omission, Liberty waived its ability to argue that the contract liability exclusion was valid. On the other hand, in *Equity General Insurance Co.*, 148 Ariz. at 517, the Arizona Court of Appeals found that a broad reservation of rights[8] letter "in a straightforward manner, informed a reader of average intelligence that while the insurer was providing a defense, it was doing so without waiving any rights to contest liability under the policy." *Id.* at 518. This would appear to support Liberty's position that a reasonable juror could conclude that it clearly and properly notified of Tapestry of its ability to invoke the contract liability exclusion (as well as any other Policy provision).

Ultimately, "the intent of the parties—insurer *and* insured—must prevail." *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 117 (1987) (emphasis in original). Tapestry states that, absent a further update, it "reasonably assumed the only grounds for denial were those stated in the March 2014 denial letter." (Doc. 53 at 8.) Liberty's position is that Arizona law requires it to "fairly communicate" its reservation of rights, and it "did just that here." (Doc. 64 at 2.) A genuine dispute of material fact exists as to whether Liberty "properly communicated" its reservation of rights under Arizona law. This precludes the

---

[8] The reservation of rights letter stated, in relevant part:

> Certain allegations of the complaint assert a right on the part of the plaintiff to recovery of damages known as punitive or exemplary damages. It is the position of the insurer that such damages are not an insured liability . . .
>
> Therefore, while Equity General Insurance Company intends to protect your interest, they do so with the following reservations and qualifications:
>
> 1. The defense or investigation of this claim shall be without waiver of or prejudice to the right of the insurer to contend that any . . . loss or damage associated with the above captioned claim is not within the terms, conditions, and provisions of the insurance coverage afforded by the subject insurance certificate.

*Id.* at 517.

1    entry of summary judgment in Liberty's favor on Tapestry's claims and on Count II of its

2    counterclaim.[9]

3    ## 2.    Untruthful Answer to Question 6

4    Liberty also argues that Tapestry's "untruthful answer" to question 6 of its insurance

5    application bars coverage in this case. Liberty asserts that it may deny coverage or rescind

6    the entire Policy as a result. (Doc. 46 at 13.) It seeks summary judgment on Tapestry's

7    claims and Counts I and VIII of its counterclaim. (Doc. 46 at 18.) Tapestry responds, in

8    addition to other arguments, that because Liberty did not assert this alleged

9    misrepresentation in its ultimate denial letter, it is precluded from doing so now.

10   Question 6 to Tapestry's application for insurance, dated October 26, 2013, asked,

11   "Does anyone for whom insurance is sought have any knowledge or information of any

12   act, error, omission, fact, or circumstance which may give rise to a Claim which may fall

13   within the scope of the proposed insurance?" (Doc. 46-1 at 30.) Tapestry answered, "No."

14   (*Id.*) Liberty points to various facts indicating that Tapestry was, in fact, aware of disputes

15   with TOC and TOC's recent threat to sue. (Doc. 46 at 13.) It points, for example, to TOC's

16   November 26, 2012 email to members of Tapestry's Board of Directors regarding a dispute

17   over parking spaces and alleged construction defects; the January 31, 2013 email from

18   Tapestry to TOC stating that the Board would give TOC 15 parking spaces and waive any

19   fees and penalties in exchange for TOC's outstanding HOA fees; the March 4, 2013 letter

20   stating that litigation "has been threatened [against Tapestry] informally on numerous

21   occasions by the owner of the commercial units . . . relating to approximately $130[,]000

22   in dues owed the HOA and designated parking spaces"; the May 14, 2013 letter from

23   TOC's counsel stating that he had been hired "regarding moving forward with litigation";

24   and Tapestry's counsel's May 17, 2013 proposed Settlement Agreement and Release for

25   TOC's consideration. (Doc. 46-1 at 15, 16, 19, 21, 23–28.) The Court agrees with Liberty

26

27   [9] In light of the Court's ruling, the Court need not reach Tapestry's additional arguments,
     including that it need not to prove prejudice due to Liberty's failure to reserve the

28   exclusion, but that even if required, Tapestry could demonstrate prejudice. (Doc. 53 at 11–
     17.)

1    that, based on these facts, Tapestry had, or should have had, knowledge of information that

2    "may" give rise to a claim falling within the scope of the proposed insurance. (*Id*. at 30.)

3                        **a.      Voiding Insurance Policy**

4          The issue, then, is one of remedy. Liberty first argues that the entire Policy is void.

5    (Doc. 14 at 23.) It points to Section 6 of the Policy, which states:

6             The Insureds represent that the statements and representations
               contained in the Application are true and shall be deemed
7             material to the acceptance of the risk or the hazard assumed by
               the Insurer under this Policy. This Policy is issued in reliance
8             upon the truth of such statements and representations.
9
               The Insureds agree that if the Application contains any material
10            statements or representations that are untrue, this Policy shall
               be void as to the Insured Organization and any Insured Person
11            who knew the facts that were not truthfully disclosed, provided
               that such knowledge shall not be imputed to any other Insured
12            Person.
13

14

15   (Doc. 4 at 14 ¶¶ 6.1, 6.2.) The Court agrees that this "clear and explicit language" could,

16   theoretically, have permitted Liberty to void the Policy with Tapestry. *Fed. Ins. Co. v.*

17   *Homestore, Inc.*, 144 F. App'x 641, 647 (9th Cir. 2005).

18         Liberty also invokes A.R.S. § 20-1109 as a separate basis for voiding the Policy,

19   which permits an insurer to prevent recovery if "[m]isrepresentations, omissions,

20   concealment of facts and incorrect statements" are "[f]raudulent," "[m]aterial either to the

21   acceptance of the risk, or to the hazard assumed by the insurer," and "[t]he insurer in good

22   faith would either not have issued the policy, or would not have issued a policy in as large

23   an amount, or would not have provided coverage with respect to the hazard resulting in the

24   loss, if the true facts had been made known to the insurer as required either by the

25   application for the policy or otherwise." A.R.S. § 20-1109. The parties dispute the

26   application of this provision, including whether the fraud prong requires an intent to

27   deceive, and whether the Court may rely on Liberty's attached declaration of Todd Weber,

28   its Underwriting Manager and Associate Vice President. (Doc. 46 at 16; Doc. 46-3; Doc.

53 at 22.)

The Court finds a genuine dispute as to whether Liberty waived its ability to void the Policy. Under Arizona law, one "seeking rescission of a contract must act promptly under the existing circumstances in stating and intent to rescind."[10] *Dewey v. Arnold*, 159 Ariz. 65, 71 (Ct. App. 1988). The opportunity to rescind upon fraud or misrepresentation "is lost if the injured party after having acquired knowledge, actual or constructive, of the fraud, manifests to the other party an intention to affirm or exercises domination of things[.]" *Id.* (citation omitted). These principles apply to insurers. *See CenTrust Mortg. Corp. v. PMI Mortg. Ins. Co.*, 166 Ariz. 50, 55 (Ct. App. 1990)

Here, as Tapestry points out, Liberty was aware of the allegedly false answer as early as its March 2014 initial denial letter, which stated:

> [T]he Insured completed and submitted an Application dated October 15, 2013 representing to Liberty that all information submitted was materially true and accurate. At the time the Application was executed, it appears that the Association was aware of the November 26, 2012 Demand as well as circumstances which could reasonably be expected to give rise to a Claim under the Policy. Therefore, Liberty reserves all rights with regard to the warranties set forth in connection with the underwriting of the Policy and the Application.

(Doc. 46-2 at 109.) Yet, as Tapestry points out, for years to come, Liberty "engaged in conduct wholly incompatible with unwinding the policy at this late date." (Doc. 53 at 21.) For example, Liberty never returned the policy premium, defended Tapestry in the Underlying Action and subsequent appeal, and renewed the Policy three times, all following March 2014.[11] (*Id.*)

---

[10] As Tapestry notes, "[r]escinding and voiding a policy are essentially the same thing." (Doc. 52 at 21.) "'[V]oidable' agreement would be one subject to rescission or ratification whereas a 'void' agreement would be incapable of ratification or disaffirmance." *Hodges v. Hodges*, 118 Ariz. 572, 574 (Ct. App. 1978).

[11] Tapestry also argues that Liberty waived this argument by failing to raise it in prior lawsuits involving the same parties. (*Id.* at 21.) Based on the Court's conclusion that Liberty otherwise may have waived voiding the Policy through its conduct, the Court need

1     "What constitutes a reasonable time in which to communicate an intention to rescind

2  is a question of fact unless the facts are such that only one inference could be derived

3  therefrom in which case it would become a question of law." *Dewey*, 159 Ariz. at 71

4  (quotations omitted). The Court will leave this determination to the trier of fact. *See Verex*

5  *Assur., Inc. v. John Hanson Sav. & Loan, Inc.*, 816 F.2d 1296, 1302 (9th Cir. 1987) ("Once

6  an insurance company acquires knowledge of facts constituting grounds for rescission, it

7  must promptly rescind the policy or the right to rescind may be waived. The essence of

8  waiver is knowledge.") (applying Oregon law) (internal citations omitted); *Princess Plaza*

9  *Partners v. State*, 187 Ariz. 214, 222 (Ct. App. 1995) ("Rescission is governed by equitable

10 principles. Persons seeking rescission must act promptly in stating an intent to rescind.")

11 (citation omitted). Liberty's request to void the Policy is denied.

12                                **b.      Coverage Precluded**

13     Liberty also argues, separately, that it may deny coverage based on Tapestry's

14 untruthful response to question 6 of the insurance application. (Doc. 46 at 17.) The

15 application stated, in bold and capital letters following question 6, "[i]t is understood and

16 agreed that if anyone for whom this insurance is sought has any knowledge of any such

17 act, error, omission, fact, or circumstance, any claim emanating therefrom shall be

18 excluded from coverage under the proposed insurance." (Doc. 46-1 at 30) (formatting

19 omitted). Liberty asserts, without citing to an Arizona authority, that courts "routinely"

20 hold that when application statements like these are violated, the insurer can "rescind the

21 policy or fully deny coverage." (Doc. 46 at 17.)

22     Nonetheless, Liberty did not invoke this provision—or Tapestry's allegedly

23 untruthful answer generally—in its ultimate denial notice. (Doc. 46-3 at 64–67.) "No

24 insurer shall deny a claim on the grounds of a specific policy provision, condition, or

25 exclusion unless reference to such provision, condition or exclusion is included in the

26 denial." Ariz. Admin. Code R20-6-801(G)(1)(a).  *See also Kaman Aerospace v. Ariz. Bd.*

27 *of Regents*, 217 Ariz. 148, ¶ 29 (Ct. App. 2007) ("The same principles of construction that

28 _____

not reach these arguments.

apply to statutes also apply to administrative rules and regulations, . . . and a public entity's regulations, if consistent with its statutory scheme, are entitled to be given the force and effect of law.") (citations omitted). Liberty does not address this argument in its reply. (Doc. 64.) Seeing no argument to the contrary, the Court agrees with Tapestry that Liberty may not properly invoke this provision of the insurance application to preclude coverage at this time.[12]

The Court notes that Tapestry also argues in its response that Liberty's efforts to void the Policy and deny coverage based on its application fail because the application is inadmissible pursuant to A.R.S. § 20-1108(C). That provision states:

> As to kinds of insurance other than life insurance, an application for insurance signed by or on behalf of the insured is not admissible in evidence in any action between the insured and the insurer arising out of the policy so applied for, if the insurer has failed, at the expiration of thirty days after receipt by the insurer of written demand therefor by or on behalf of the insured, to furnish to the insured a copy of the application reproduced by any legible means.

A.R.S. § 20-1108(C). Tapestry references a July 18, 2014 email from its counsel, Christopher LaVoy, requesting from TOC a copy of all "extrinsic evidence" supporting Liberty's coverage position, including the "October 15, 2013 policy application." (Doc. 47-3 at 2.) Tapestry states that it did not receive a copy within 30 days of the request. (Doc. 53.)

Even assuming that A.R.S. § 20-1108(C) applies here, it applies to admissibility of the insurance application at trial. To "survive summary judgment, a party need not necessarily produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir.2001); *see also Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 1991) ("[T]he nonmoving party need not produce

---

[12] This is in contrast with the contract liability exclusion, for example, which is referenced in the December 2017 denial letter. (Doc. 46-3 at 65.)

evidence in a form that would be admissible at trial in order to avoid summary judgment.") (quotation marks and citation omitted). While the parties may dispute the admissibility of the insurance application at trial, Liberty's motion fails for the other reasons described herein.[13]

Liberty's motion for summary judgment on Tapestry's claims, as well as on Counts I and VIII of its own counterclaim, is denied.

### 3.   Construction Defects

Liberty also moves for summary judgment on Tapestry's claims and Count III of its counterclaim based on the construction defect exclusion. (Doc. 46 at 18.) Section 4.11 of the Policy states that it "does not apply to any Claim made against any Insured . . . based upon, arising from, or in any way related to any Construction Defect." (Doc. 4 at 12–14 ¶ 4.11.) A "Construction Defect" means "any actual or alleged defective, faulty or delayed construction or other matter recognized as a construction defect under appliable common or statutory law. . ." (*Id.* at 21 ¶ 23.23.) Count III of Liberty's counterclaim requests a declaratory judgment "that there is no coverage for the Judgment entered in the Underlying Action by virtue of the Construction Defect Exclusion and that, as a result, Liberty has no obligation to pay the Association for the Judgment entered in the Underlying Action." (Doc. 10 at 17 ¶ 53.)

Liberty argues that during closing argument in the Underlying Action, TOC's counsel presented "six different things to look for" as proof of its breach of contract and implied covenant of good faith and fair dealing claims. (Doc. 46-3 at 52.) Liberty references three of the six: "it took the better part of a decade to fix a minor crack, a cosmetic crack in a concrete wall"; Tapestry had not "offered any evidence that the firestopping in Building C is done, a very serious building and safety issue"; and Tapestry had a "poorly engineered parking garage, rendering the cooling load impossible to meet with the existing equipment." (*Id.* at 52–53.) It asserts that, under the terms of the Policy

---

[13] Liberty also notes that Tapestry's insurance broker was in possession of the application, and therefore, Tapestry effectively was, as well. (Doc. 57 at 16.) The Court need not address this factual dispute.

and under Arizona law, at least these three items qualified as "Construction Defects." (Doc. 46 at 19); *see also* A.R.S. § 12-1361(4)(a) (defining "construction defects" to mean, among other things, "a material deficiency in the design, construction, manufacture, repair, alteration, remodeling or landscaping of a dwelling that is the result of . . . [a] violation of construction codes applicable to the construction of the dwelling."). Therefore, Liberty argues that the judgment in the Underlying Action was "based upon, arising from, or in any way related to any Construction Defect," and therefore is precluded from coverage. (Doc. 4 at 12–14 ¶ 4.11.)

The Court is not convinced by this argument. As Tapestry argues, even accepting that three of the six items involved construction defects as defined in the Policy, it is "impossible to know which theory the jury had in mind because a general verdict form was used." (Doc. 53 at 23.) Indeed, a review of the jury verdict form indicates no justifications for the jury's findings. (Doc. 47-1 at 6–8.) Accordingly, Tapestry cannot say with certainty that the Underlying Judgment was based upon, arising from, or in any way related to any construction defect. *See State Farm Fire & Cas. Co. v. Nycum*, 943 F.2d 1100, 1106 (9th Cir. 1991) ("[T]he problem with a general verdict form is that a reviewing court cannot know what the jury found. All we can say on review is that the jury, having been instructed on different theories, might have found either negligence, or intentional harm, or both. It was the responsibility of the parties to argue before the district court which of these theories has support in the record."). Tapestry may plausibly convince a jury in this matter that the underlying judgment was based on the parties' dispute over parking spaces, for example— which no party argues arises from a construction defect. For this reason, dispute of a material fact precludes the entry of summary judgment in Liberty's favor on Tapestry's claims and Count III of its counterclaim.

### 4.    A Covered "Loss"

As an alternative argument, Liberty posits that "[e]ven if the Court were to conclude that none of the foregoing coverage defenses apply," Tapestry cannot demonstrate that the judgment in the Underlying Action constitutes a "Loss" under the Policy. (Doc. 46 at 19–

20.) A "Loss" is defined as "sums which the Insureds are legally obligated to pay solely as a result of any Claim insured by this Policy, including damages, judgment, punitive or exemplary damages, and the multiple portion of any multiplied damage award . . ." (Doc. 4 at 20 ¶ 23.14.) Liberty argues that although Tapestry "purports to seek coverage under the Policy for the Judgment," it never actually paid the judgment because it "later settled the Underlying Action (and other matters) with TOC." (Doc. 46 at 20.) Liberty seeks summary judgment on Tapestry's claims as well as on Count V of its counterclaim. (*Id.*) Count V seeks a declaratory judgment that "there is no coverage for the Judgment entered in the Underlying Action because Plaintiff has no legal obligation to pay the Judgment by virtue of it having entered into the Underlying Settlement Agreement, which, upon information and belief, has or will result in the Judgment being fully satisfied." (Doc. 10 at 18 ¶ 59.)

Specifically, Liberty states that as part of the settlement agreement with TOC, Tapestry "paid $3.9 million to purchase TOC's commercial units and to obtain a release of the Underlying Action and a release of a number of other matters." (*Id.*) Because the commercial units at issue were not appraised or valued at the time of the settlement, it argues that Tapestry "cannot demonstrate what amount of the underlying settlement was allocable to the purchase of the units"—and therefore cannot demonstrate that it paid a "loss." (*Id.*)

This argument is not convincing. First, although Liberty argues that Tapestry cannot allocate the underlying judgment, Tapestry's president testified in his deposition that "everything above the judgment amount was attributable to the purchase of the commercial units." (Doc. 53-1 at 6.) Second, as Tapestry notes, the Policy is a "liability policy, not an indemnity policy." (Doc. 53 at 4.) *See also* Doc. 4 at 12 ¶ 1 ("The Insurer shall pay on behalf of the Insureds all Loss which they shall become legally obligated to pay as a result of a Claim. . ."); 7A Couch on Ins. § 103:5 ("An insurance policy is one of liability, rather than indemnity, where it states that the insurer 'will pay on behalf of the insured all sums which the insured becomes legally obligated to pay as damages' or any language similar

thereto."). The "major substantive distinction between a liability policy and an indemnity contract is that payment of a claim by the insured is a condition precedent to the insured's right to recover under the indemnity contract but not under the liability contract." *Id.* at § 103:4. *See also INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 253 (Ct. App. 1986) (a liability provision "applies once liability for a cause of action is established; the indemnitee is not required to make actual payment."). Accordingly, Tapestry argues, the judgment qualified as a "Loss"; Liberty breached the Policy when it refused to indemnify Tapestry in December 2017, once the trial court's judgment was entered. (Doc. 53 at 5.) The Court finds that these two arguments present a genuine dispute as to whether the Underlying Action constituted a "Loss" under the Policy, thereby precluding summary judgment.

The Court is mindful of Liberty's argument in its reply brief that the Underlying Action judgment was not final until it became non-appealable. (Doc. 64 at 10–11.) The Arizona cases it cites, though, did not arise in precisely this context. In *Taylor v. State Farm Mutual Automobile Insurance Co.*, the Arizona Supreme Court "h[e]ld that a third-party bad faith failure-to-settle claim accrues at the time the underlying action becomes final and non-appealable." 185 Ariz. 174, 179 (1996). The present case is not a third-party bad faith failure-to-settle case. Liberty also cited *Smith v. Astrue*, No. CV-11-2524-PHX-DGC, 2013 WL 758024 (D. Ariz. Feb. 27, 2013), for the proposition that "[f]inal judgment 'means a judgment that is final and not appealable.'" *Id.* at *1 (citing 28 U.S.C. § 2412(d)(1)(G)). That matter involved a motion for attorney's fees pursuant to a Social Security appeal, and directly quoted the Equal Access to Justice Act, 28 U.S.C. § 2412, which is not relevant here. The Court need not resolve this particular dispute at this time, though. Even if the underlying judgment became final when it was no longer appealable— that is, at the time of TOC's and Tapestry's settlement—Tapestry has presented evidence (including testimony from its president) that the settlement was comprised of the full amount of the judgment plus the value of the relevant commercial units. (Doc. 53-1 at 6.) Tapestry's request for summary judgment on this basis is denied.

### 5.    Bad Faith Claim

Liberty also argues that, in light of its foregoing arguments, Tapestry "cannot point to any evidence demonstrating that Liberty either knew its conduct was unreasonable or acted with reckless disregard." (Doc. 46 at 21.) Therefore, Liberty argues, it is entitled to summary judgment on Tapestry's bad faith claim. As previously described, the Court concludes that Liberty is not entitled to summary judgment on Tapestry's claims at this time. Further, as Tapestry notes—and as Liberty declined to reference—the Scheduling Order in this case dictates that the case is being conducted in two phases.[14] Discovery during Phase One, the present phase, was "focused on issues related to coverage." (Doc. 20 at 1–2.) Within ten days of the Court's ruling on the parties' dispositive motions, the parties must "jointly notify the Court that the parties are ready for scheduling of Phase Two Discovery," which the parties identified as "coverage relating to bad-faith issues." (*Id.* at 7; Doc. 17 at 6.) Given that a schedule has not even been set for conducting bad-faith-related discovery, the Court has no difficulty in concluding that Liberty's request for summary judgment on Tapestry's bad faith claim is premature.

### 6.    Request for Additional Briefing

In the conclusion to its motion, Liberty requests that the Court "set a hearing and/or receive additional briefing" to determine the amount of attorney's fees to which it is entitled pursuant to A.R.S. § 12-241.01 and the amount it entitled to recoup from Tapestry pursuant to Counts I and VIII of its counterclaim. Based on the Court's foregoing rulings, this request is denied.

### B.    Tapestry's Motion for Partial Summary Judgment (Docs. 47, 48)

In its own motion for partial summary judgment,[15] Tapestry moves the Court to

---

[14] The Scheduling Order was entered by Judge Humetewa before the case was transferred to the undersigned Judge.

[15] The Court notes that, aside from its title and the one-sentence conclusion, Tapestry's 21-page memorandum in support of its motion never references the term "summary judgment," including its legal standard. (Doc. 48.) It requests that the relevant counts of Liberty's Counterclaim be "dismissed with prejudice." (Doc. 47 at 1.) The Court interprets each argument as a partial motion for summary judgment, and urges Liberty to use better

1    enter summary judgment on its claim for breach of contract (Count I) and on Counts I–V,

2    VII, and VIII of Liberty's counterclaim. (Doc. 47 at 2–4.) The parties' respective

3    arguments track, in significant part, those in Liberty's motion. Following the filing of

4    Tapestry's motion, Liberty voluntarily dismissed Count VII of its counterclaim (as well as

5    Paragraph 44 of the same) without prejudice. (Doc. 60.) Accordingly, the Court addresses

6    Tapestry's arguments regarding its own breach of contract claim, and Counts I–V and VIII

7    of Liberty's counterclaim, in turn.

8    **1.    Alleged Application Misrepresentation**

9    Tapestry first argues that Liberty cannot deny coverage or rescind the Policy based

10   on Tapestry's alleged misrepresentation in the 2013 insurance application. (Doc. 48 at 6.)

11   Though it does not clearly state, the Court understands this to be a motion for summary

12   judgment on Counts I and VIII of Tapestry's counterclaim. Tapestry does not argue that its

13   answer to question 6 was accurate. Rather, it argues that Liberty waived the ability to void

14   the Policy, which is effective and enforceable, that the argument is time-barred, that the

15   application is inadmissible, and that Liberty engaged in conduct incompatible with voiding

16   or rescinding the Policy.[16] (Doc. 48 at 7–9.)

17   As the Court previously described, Tapestry's signatory to the insurance application

18   either knew, or should have known, "of any act, error, omission, fact, or circumstance

19   which may give rise to a Claim which may fall within the scope of the proposed insurance."

20   (Doc. 46-1 at 30.) Therefore, and also for the same reasons as discussed above, the Court

21   finds that genuine disputes of material fact preclude summary judgment in Tapestry's favor

22   on Counts I and VIII of Tapestry's counterclaim based on its insurance application. As that

23   part of Liberty's motion is denied, so too it is with respect to Tapestry.

24

25

26   precision in the future.

27   [16] Tapestry also argues that Liberty "cannot collaterally" attack a prior court judgment
     involving the parties which contained an "implicit determination" that the Policy was
28   effective and enforceable, in reference to *Tapestry v. Liberty*, Case No. 2:18-cv-04857-
     PHX-JJT (D. Ariz.). The Court need not reach this argument.

1

2.      **Contract Liability Exclusion**

2        Tapestry also argues that the contract liability exclusion, found in Section 5.2 of the

3    Policy, does not preclude coverage in this case. (Doc. 48 at 11.) As noted, Section 5.2 states

4    that Liberty "shall not be liable to pay any Loss in connection with any Claim for any actual

5    or alleged liability of any Insured under any contract or agreement, express or implied,

6    written or oral, . . ." (*Id.* at 10–11; Doc. 4 at 14 ¶ 5.2.) Tapestry does not argue that the

7    provision is substantively inapplicable. Rather, it argues that Liberty did not adequately

8    reserve its right to invoke the exclusion. The Court understands Tapestry to move for

9    summary judgment on Count II of Liberty's Counterclaim. (Doc. 10 at 17.)

10       As the Court previously described, the parties have presented a genuine issue of

11   material fact as to whether Liberty "properly communicated" its reservation of right to

12   invoke the contract liability exclusion, as required under Arizona law. *See United Servs.*

13   *Auto. Ass'n*, 154 Ariz. at 116. The finder of fact shall determine whether Liberty's assertion

14   in its March 2014 letter that it "expressly reserves all rights and defenses under the Policy"

15   adequately informed Tapestry of the possibility that Liberty would later deny coverage

16   based on the contract liability exclusion. (Doc. 46-2 at 106.)  For the same reasons as above,

17   Tapestry is not entitled to summary judgment. And, as above, the Court need not reach

18   Liberty's additional arguments, including that it is not required to show prejudice, and that

19   even if it were, proof of prejudice exists.[17] (Doc. 48 at 11–15.)

20       That said, Tapestry also argues that the merits of the contract liability exclusion do

21   not apply for the additional reason that it "had a pre-existing, non-contractual, common

22   law duty to treat TOC fairly." (Doc. 48 at 16.) *See also Tierra Ranchos Homeowners Ass'n*

23   *v. Kitchukov*, 216 Ariz. 195, 201 ¶ 25 (Ct. App. 2007) (recognizing a duty to treat members

24   of a common-interest community association "fairly"). It asserts that it is "undisputed" that

25   the contract liability exclusion would not have applied, had TOC sued Tapestry for breach

26   of this common-law duty in the Underlying Action, rather than for breach of contract and

27

28   [17] As discussed below, for this reason, the Court will deny Tapestry's motion to certify a
     question of law to the Arizona Supreme Court. (Doc. 54.)

breach of the implied covenant of good faith and fair dealing. (*Id.*) It further states, without citation, that "[c]overage should not turn on the fortuity of whether the plaintiff elects to proceed under a tort or contract theory." (*Id.*)   The Court is not persuaded by this novel argument. TOC prevailed on its claims of breach of contract and breach of the implied covenant of good faith and fair dealing against Tapestry. Tapestry cannot now speculate about what would have happened if TOC had sued it on another ground, whether in addition to or to the exclusion of the claims actually asserted. The fact that this separate cause of action theoretically exists, and could have been invoked in the Underlying Action, does not render the contract liability exclusion inapplicable. Tapestry's motion for summary judgment on Count II of Liberty's counterclaim is denied.

### 3.    Construction Defect Exclusion

Tapestry also argues that Liberty cannot meet its burden of proof on the construction defect exclusion (Count III of its counterclaim). As noted, Section 4.11 of Policy states that it "does not apply to any Claim made against any Insured . . . based upon, arising from, or in any way related to any Construction Defect," which is separately defined. (Doc. 4 at 12–14 ¶ 4.11.) Tapestry notes that under Arizona law, the "insurer bears the burden to establish the applicability of any exclusion." (Doc. 48 at 17) (citing *Keggi*, 199 Ariz. at 46 ¶ 13). As in its response to Liberty's motion for summary judgment, Tapestry asserts that TOC "alleged a multitude of wrongs" and it is "impossible to know what conduct the jury had in mind because a general verdict form was used." (*Id.* at 17.)

Liberty emphasizes in response that courts apply a "broad meaning" to exclusions, like the one in Section 4.11, containing language such as "based upon, arising from, or in any way related to." (Doc. 57 at 19) (citing *Amerisure Mut. Ins. Co. v. Houston Cas. Co.*, No. CV-17-02269-PHX-DGC, 2019 WL 1014843, at *7 (D. Ariz. Mar. 4, 2019)). The Court agrees that the language in the construction defect exclusion is broad. Nonetheless, as previously described, it is not necessarily the case that the jury's verdict was "in any way related to" construction defects. As with Liberty's motion, Tapestry's motion for summary judgment on Count III of Liberty's counterclaim is denied.

### 4.     Claim Falls Within the Policy Period

Tapestry also argues that the Underlying Action is a covered "Claim" as defined in the Policy because it commenced within the policy period. A "Claim" is defined as a "written demand for monetary or non-monetary relief against an Insured" or "the commencement of a civil or criminal judicial proceeding or arbitration against an Insured." (Doc. 4. at 18 ¶ 23.3.) The insurance policy was effective from October 26, 2013 to October 24, 2014. (Doc. 4 at 11.) Tapestry states that because the Underlying Action was commenced on January 24, 2014, it constitutes a coverable "Claim" under the policy. The Court understands this to be a motion for summary judgment on Count IV of Liberty's counterclaim, which requests a declaration that "there is no coverage for the Judgment entered in the Underlying Action because the Underlying Action arises from the same Wrongful Acts or Interrelated Wrongful Acts as the Demand and, as such, constitutes a single Claim that was first made prior to the Policy Period." (Doc. 10 at 18 ¶ 56.)

Liberty does not address this argument in its response. As a result, it can be "deemed to have conceded" this argument. *Maxwell v. McLane Pac., Inc.*, No. CV 17-550 PA (ASX), 2017 WL 8186758, at *9 (C.D. Cal. Oct. 19, 2017); *PageMasters, Inc. v. Autodesk, Inc.*, 2009 WL 825810, at *10 (D. Ariz. March 30, 2009) (construing plaintiff's lack of response to defendant's argument as a concession of the validity of defendant's argument on the merits). The Court grants summary judgment to Tapestry on Count IV of Liberty's Counterclaim.

### 5.     The "Loss" Requirement

Tapestry also argues, briefly, that the "Loss" requirement in the Policy is satisfied because the underlying judgment "falls squarely within [the] definition of Loss, as does the settlement amount paid to resolve the Judgment when Liberty refused to indemnify." (Doc. 48 at 21–22.) The Court understands this to be a motion for summary judgment on Count V of Liberty's Counterclaim, which seeks a declaratory judgment that no coverage exists because Tapestry has no legal obligation to pay the Judgment by virtue of it having entered into the Underlying Settlement Agreement." (Doc. 10 at 18 ¶ 59.) For the same reasons as

1   discussed above, the Court denies Tapestry's motion for summary judgment on this claim.

2   A genuine dispute of material fact exists as to whether Tapestry suffered a "Loss" under

3   the Policy in light of the subsequent appeal and settlement of the Underlying Action.

4   Tapestry's motion on Count V of Liberty's counterclaim is denied.

5                    **6.      Policy Limit Payment**

6          Tapestry asserts, in a brief paragraph, that it should be paid the $1 million policy

7   limit. (Doc. 48 at 22.) For the foregoing reasons, triable issues of fact exist with respect to

8   various Policy exclusion. These disputes preclude the entry of summary judgment on

9   Tapestry's breach of contract claim. Accordingly, Tapestry's request for payment is denied

10  at this time.[18]

11  **IV.    MOTION TO CERTIFY QUESTION**

12         Tapestry has also filed a motion for an order certifying the following question of

13  law to the Arizona Supreme Court:

14
15              Does an insurer's failure, when undertaking defense of an
16              action, to specifically reserve its right to deny coverage based
                on an exclusion that it has actual or constructive knowledge of
17              result in loss of such ground for denial, without need for the
                insured to show prejudice, as provided in § 15 of the
18              RESTATEMENT OF LIABILITY INSURANCE (2019) (the
                "RESTATEMENT")? In other words, should Arizona adopt
19              § 15 of the RESTATEMENT?

20
21  (Doc. 54 at 1.) Under Arizona law, the Arizona Supreme Court may:

22              answer questions of law certified to it by . . . a United States
23              district court . . . when requested by the certifying court if there
                are involved in any proceedings before the certifying court
24              questions of law of this state which may be determinative of
                the cause then pending in the certifying court and as to which
25              it appears to the certifying court there is no controlling
                precedent in the decisions of the supreme court and the
26

---

27  [18] Tapestry also argues that Count VII of Liberty's Counterclaim, for fraudulent
28  inducement (Doc. 10 at 19), should be dismissed with prejudice. As previously noted,
    Liberty has since voluntarily dismissed Count VII without prejudice. (Doc. 60.) As such,
    the Court does not address that argument at this time.

intermediate appellate courts of this state.

A.R.S. § 12-1861.

The focus of the question proposed by Tapestry is on whether a showing of prejudice is required to find that an insurer has failed to specifically reserve its right to deny coverage. Tapestry points to allegedly conflicting cases applying Arizona law. *Compare, e.g., Hagen v. U.S. Fidelity & Guaranty Insurance Co*., 138 Ariz. 521, 526–27 (Ct. App. 1983) (providing a waiver test of "[h]as the insurer failed to make a reasonable effort to advise its insured of its disclaimer of all obligations under the policy?" without reference to prejudice), *with Penn Amer. Ins. Co.*, 220 Ariz. at 13 ¶ 32 (requiring prejudice).

The Court declines to certify this question to the Arizona Supreme Court. A.R.S. § 12-1861 requires that that the question "may be determinative" of the pending cause. *See Chaparro v. Ryan*, No. CV-19-00650-PHX-DWL-MHB, 2019 WL 3361244, at *3 (D. Ariz. July 25, 2019) (recognizing same). As described herein, a genuine dispute of material fact exists as to whether Tapestry properly communicated its reservation of rights. The Court has accordingly denied the parties' motions for partial summary judgment based on the contract liability exclusion (Section 5.2 of the underlying insurance policy). Therefore, resolution of the question presented would not be determinative of the present action. As such, Tapestry's motion to certify a question to the Arizona Supreme Court is denied.

## V.    MOTIONS TO SEAL

Lastly, Liberty has filed two motions for leave to file under seal. (Docs. 58, 62.) The Court addresses them in turn.

### A.    Liberty's Amended Motion (Doc. 58)

Liberty previously moved to seal the 2017 Settlement Agreement and Release entered into between the parties; its motion for summary judgment, which "discusses the terms of the Settlement Agreement"; and "any other documents filed in connection with summary-judgment briefing that discusses the terms of the Settlement Agreement." (*Id*. at 2.) It argued that sealing was appropriate because the Settlement Agreement "contains a clause requiring the parties to keep the terms of the agreement confidential." (Doc. 42 at

2.) The Court denied that request without prejudice, noting the public's general right to access judicial records and documents, as well as courts' previous findings that an agreement to keep a settlement agreement confidential does not, in itself, show a compelling reason to justify sealing. It permitted Liberty to "file another motion to seal that identifies, with specificity and compelling reasons, those portions of the Motion for Summary Judgment and Settlement Agreement that contain sealable material." (Doc. 52 at 4.)

Liberty has since filed an amended motion for leave to file under seal, which, as before, requests that its 2017 Settlement Agreement and Release with Tapestry, its own summary judgment motion, and "any other documents filed in connection with summary-judgment briefing that discuss the terms of the settlement agreement" be sealed. (Doc. 58 at 2.) Tapestry opposes the motion, though it indicated that it would agree to a redaction of the settlement amount, "which is the only arguably sensitive information." (Doc. 66 at 4.)

As Liberty notes, a motion to seal documents attached to a dispositive motion is governed by the "compelling reasons" standard. *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quotations omitted). If a court decides to seal certain judicial records after considering these interests, "it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (quotations omitted). Generally, "compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (quotations omitted).

Liberty first invokes the clause requiring the parties to keep the terms of the agreement confidential. As the Court has already rejected this argument (Doc. 52), it does not reevaluate it here. Liberty next argues that the settlement agreement contains "specific

financial terms" that the parties agreed to keep confidential, including the settlement amount and the "billing rates of legal personnel who worked on the Settlement Agreement and its underlying issues." (Doc. 58 at 3.) It notes that this information is not necessary to resolution of its motion for summary judgment, and that disclosure of billing rates "could impact the competitive standing" of the attorneys.[19] (*Id*.) The Court is not persuaded that Liberty has demonstrated what "specific prejudice or harm will result" if the documents are not sealed, and the Court is precluded from hypothesizing or assuming that a compelling reason exists. *See Kamakana*, 447 F.3d at 1179. These are not compelling bases for granting the motion.

Liberty also argues that the settlement agreement was signed by other individuals who are not parties to the present action. The Court finds that Liberty has not adequately demonstrated—or even argued—that prejudice or harm will result to these individuals. Further, in other cases sealing non-parties' information, courts have permitted redaction while noting the "relatively small, specific portion of their personnel files that outweighs the public's right of access" and because a party had made a "good faith effort to carefully redact these exhibits." *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV 09-1531-PHX-JAT, 2011 WL 4947343, at **3–4 (D. Ariz. Oct. 18, 2011). Here, in comparison, Liberty seeks to seal the entire settlement agreement and all of the summary judgment briefing. It has not demonstrated that compelling reasons justify such a result. Liberty's amended motion for leave to file under seal is denied.

**B.      Liberty's Second Motion (Doc. 62)**

Liberty has also moved to file under seal a 2018 Settlement Agreement and Release that it entered into with Tapestry in connection with other then-pending lawsuits (a different settlement agreement than previously discussed), its reply in support of its motion for summary judgment, and "any other documents that reference the terms" of the 2018 settlement agreement. (Doc. 62 at 1.) This motion largely tracks the prior motion. It argues

---

[19] The Court notes that attorneys routinely submit billing rates to courts in connection with motions for attorney's fees, for example.

that the agreement contains a clause requiring it to be kept confidential and monetary terms that the parties "agreed to keep confidential." (*Id*. at 3.) For the same reasons as above, the Court is not persuaded by these arguments.[20] Liberty's second motion for leave to file under seal is also denied.

## VI.    CONCLUSION

Accordingly,

**IT IS ORDERED denying** Defendant/Counterclaimant's Motion for Summary Judgment (Doc. 46).

**IT IS FURTHER ORDERED granting in part and denying in part** Plaintiff/Counter-defendant's Motion for Partial Summary Judgment (Doc. 47). The motion is granted as to Count IV of Liberty's Counterclaim. It is denied in all other respects.

**IT IS FURTHER ORDERED denying** Plaintiff/Counter-defendant's Motion to Certify Question to Arizona Supreme Court. (Doc. 54.)

**IT IS FURTHER ORDERED denying** Defendant/Counterclaimant's Amended Motion for Leave to File Under Seal (Doc. 58.)

**IT IS FURTHER ORDERED denying** Defendant/Counterclaimant's Second Motion for Leave to File Under Seal (Doc. 62).

**IT IS FINALLY ORDERED** that, pursuant to the Scheduling Order in this case, the parties shall jointly file a second Joint Case Management Report addressing Phase Two Discovery, as identified therein, within **ten (10) days** of the date of this Order.

Dated this 29th day of March, 2021.

Michael T. Liburdi
United States District Judge

---

[20] Liberty also notes that its reply brief references the 2017 Settlement Agreement previously discussed. For the same reasons as above, this is not a compelling reason to seal.